48 CCPA

**Application of Henry W. KERN.**

**Patent Appeal No. 6671.**

United States Court of Customs and Patent Appeals.

April 14, 1961.

As Amended on Rehearing

July 7, 1961.

———◆———

Balluff & McKinley, Detroit, Mich. (E. J. Balluff, Detroit, Mich., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of*

KIRKPATRICK, Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office sustaining the examiner's rejection of method claims 22, 24, 25 and 26 and article claims 27 to 31, inclusive, of the appellant Kern's application serial No. 442,478 for a patent for "Fastening Element Designed for Welding," (in this case a weld nut).

The process claims on appeal relate to a method of making weld nuts from a standard square nut blank by a single application of pressure to cold form the blank between the upper and lower dies of a press. Claim 22 may be taken as representative of the rejected method claims and is as follows:

"22. A method of forming a polygonal weld element having a generally axially disposed bore from a discrete blank having substantially parallel generally flat end surfaces and a peripheral surface normal to and intersecting said end surfaces to form meeting edges therewith, said method including the steps of (1) supporting the blank while leaving a plurality of spaced localized areas of one end surface adjacent the edge thereof unsupported, (2) simultaneously and uniformly applying axial pressure of metal deforming intensity against the other end surface directly opposite said areas, (3) uniformly increasing the areas of pressure applied to said other end surface inwardly toward the axial center of the blank so as to axially displace said edge areas to form essentially axially disposed welding projections while (4) maintaining the peripheral surface normal to the planes of the original end surfaces, (5) discontinuing the applied axial pressure when an amount of pressure has been applied sufficient to deform the spaced projections a predeter-

*Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

mined axial distance beyond the original plane of said one surface so as to form a polygonal weld element having a plurality of uniform welding projections on one surface at the corners thereof and within the area defined by the peripheral surface of said weld element while confining the axial displacement of said projections so that the tips of said projections will lie in a common plane."[1]

The references relied on by the board are:

| | | | |
|---|---|---|---|
| Almdale (1) | 2,054,187 | Sept. | 15, 1936 |
| Demboski et al. | 2,073,467 | Mar. | 9, 1937 |
| Green | 2,355,856 | Aug. | 15, 1944 |
| Howe | 2,612,647 | Oct. | 7, 1952 |

---

The board held that the rejected method claims were unpatentable over Almdale (1) as the basic reference, with Howe, Demboski and Green as secondary references.

In view of Demboski et al. and Howe the appellant cannot well claim that the idea of forming a weld nut from a standard blank in a "one shot" operation is new nor that it is new to displace metal from one side of a nut to form projections on the other side.

Now referring to the first of the five so-called steps called for in claim 22, there is no novelty in using, in a die press operation to form a weld nut, a lower die which by reason of cavities in its surface leaves unsupported the corners of the blank from the underface of which corners metal is to be extruded by pressure applied to the upper face. This is fully disclosed in Howe and, indeed, not only is it obvious, but it would not be possible to extrude metal axially by cold flow from a wholly supported lower surface.

Steps (2) and (5) taken together claim no more than operating the die press in the way in which such tools usually are operated and stopping when enough metal has been extruded to make projections of the desired size and shape.

Step (4), together with the description in step (5) of the welding projections as "within the area defined by the peripheral surface of said weld element" (claims 22, 24 and 25) or "without substantial lateral deformation from the original sides of the blank" (Claim 26), merely states an obvious expedient.

The only point at which the appellant can contend with the slightest degree of plausibility that his invention has any novelty over the combined references cited against it by the board is step (3), "uniformly increasing the areas of pressure applied to said other end surface inwardly toward the axial center of the blank so as to axially displace said edge areas to form essentially axially disposed welding projections." This describes the operation of an upper die with a beveled engaging surface which extends outwardly beyond the outside of the nut and terminates in a blunt face. As the board pointed out, "The operation of this beveling die will cause pressure to be applied first to the outermost portion of the corner and then to radially inward portions as the metal deforms." As against the contention that this was a novel step, the board cited Almdale (1) and Demboski. The Almdale drawings, Figs. 2 and 3, disclose a finished nut which shows every feature of alleged patentable novelty of the article of the appellant's application. The appellant's interpretation of Fig. 3, of Almdale as showing bevels on two upper edges rather than at the four corners is answered by

---

1. The numbers in the above text do not appear in the claim but have been inserted for convenience of reference in the discussion which follows.

the specification, which states that the *corners* may be formed with bevels, and the fact that the term "corners" is consistently used in the specification to denote the intersection of three, not two, surfaces.

Almdale includes in his specification the statement, "The outer corners of the head may be formed with bevels 18 and the pressure employed in so forming the corners may flow the metal of the head to entirely form the triangular projections 16, or to cause them to extend further.", and a person of ordinary skill in the art would know that the use of a beveled die for this purpose is necessary. The appellant, because of the use of the word "may," refers disparagingly to this statement as "conjectural." However, it seems to us that, although not claimed, it is about as clear a disclosure of how the desired result is to be obtained as anything could be.

It is to be remembered that the article of the application, with its weld projections, is old, and an over-all consideration of the rejected claims strongly suggests that the invention, if any, resides in providing tools of the proper form to produce such an article. Given the task of producing the nut of Almdale's Figs. 2 and 3 by die pressing, it would be well within the capabilities of any diemaker skilled in the art to make dies which would produce the desired article. After all, a die is substantially a mold or counterpart for the article desired.

We hold that the board made no error in affirming the examiner's rejection of claims 22, 24, 25 and 26.

 As to the article claims, these were all rejected by the examiner, and his action was not reversed by the board. They are all product by process claims and are all for a fully anticipated product. Of course, those article claims which incorporate disallowed method claims (28, 30 and 31) are not patentable. As to claims 27 and 29, which are dependent from allowed claims even if

the process were new, that fact does not render a claim for an old product valid.

We hold that the board was correct in affirming the examiner's rejection of the article claims.[2]

Affirmed.

SMITH, Judge, did not sit during the argument and did not participate in the decision.

48 CCPA

---

2. Petition for rehearing filed by appellant was granted for the sole purpose of changing certain language in the original opinion of the court.